**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ANNA BURKETT                                                                   PLAINTIFF

VS.                      CASE NO. 4:06-CV-00387 GTE

DE WAFELBAKKERS, INC.                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT**

Plaintiff Anna Burkett alleges that she was paid less than a younger male because of her age and gender in violation of the Equal Pay Act, 29 U.S.C. § 206(d), Title VII, and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq*. It is undisputed that the Defendant hired a younger male, Richard Milner, to take over the position of human resources manager in anticipation of the Plaintiff's retirement, and agreed to pay Milner $ 7,000 more than it had been paying Plaintiff.[1] The Defendant employed both Plaintiff and Milner for approximately five months, from August 24, 2005 through February 3, 2006.

Plaintiff seeks money damages for backpay, benefits, liquidated damages and punitive damages. Defendant De Wafelakkers, Inc. has moved for summary judgment on both of Plaintiff's claims. For the reasons stated below, the Court concludes that the Defendant has failed to satisfy its burden under Fed. R. Civ. P. 56.

**I.**

Summary judgment should be entered if the evidence, viewed in the light most favorable

---

[1] The pay differential is more significant in light of Plaintiff's $29,000 salary at the time Milner was hired. Milner's starting salary was 24% more than Plaintiff's salary.

- 1 -

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). A genuine issue of material fact exists only if there is sufficient evidence from which a jury can return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

**II.**

Plaintiff Anna Burkett worked for De Wafelbakkers from November 11, 1996 until her retirement on February 3, 2006. When she retired, Ms. Burkett's job title was Human Resources Manager. On March 27, 2006, shortly after her retirement, Plaintiff filed the present suit.

De Wafelbakkers is a bakery facility. Located in North Little Rock, Arkansas, De Wafelbakkers produces breakfast foods, including pancakes, french toast and waffles, for distribution throughout the United States. Since its inception in 1984, the company has expanded its physical facilities on at least two different occasions, and it is currently in the process of doubling its current square footage of manufacturing and storage facilities.

De Wafelbakkers has grown steadily. Beginning in 2005, the company went from a one-shift production line to a seven day a week, twenty-four hour a day operation.

Plaintiff was initially employed as a payroll clerk. Part of her initial duties included preparing weekly payroll and insuring that payroll taxes were paid. In August 1997, Plaintiff assumed additional duties, assuming the title, payroll clerk/personnel coordinator. Plaintiff later became responsible for administering the company's hospitalization and 401(k) programs, and her job title became Human Resources Manager.

In 2004, Plaintiff advised management that she planned to retire at the end of January 2006. At the time, the Defendant was planning to convert to a new accounting system that

included a new payroll module. Plaintiff informed management that it would not make sense for her to learn the new payroll system or work the extra hours necessary to implement the new system since she would not be using the new system in light of her retirement. In 2005, De Wafelbakkers went forward with installing the new accounting system but delayed the implementation of the payroll system.

In approximately mid-2005, De Wafelbakkers began considering the company's future needs in connection with the Human Resources Manager position Plaintiff was vacating. De Wafelbakkers claims that it envisioned Plaintiff's replacement as assuming more professional level functions, such as assuming recruiting functions and assisting in hiring decisions and conflict resolutions, which would result in greater uniformity in its employment practices. Plaintiff claims that De Wafelbakkers is greatly understating Plaintiff's role, while overstating the role of her replacement. Defendant stresses its growth after Plaintiff's employment ended, but it appears undisputed that the Defendant also experienced significant growth during the period that Plaintiff served as its Human Resources Manager and that Plaintiff was able to perform the job duties required by the Defendant.

In August 2005, Fred Belote, De Wafelbakkers' Vice President of Finance, interviewed Richard Milner for the human resources manager position. Belote had worked with Milner in the past and was familiar with Milner's qualifications. Milner was offered the job at a yearly salary of $36,000 and he accepted it. At the time Milner was hired, Plaintiff was earning $29,000.

Defendant claims that it agreed to pay Milner $7,000 more than Plaintiff after taking into consideration "the fact that Milner would be performing not only the duties that Plaintiff was then performing, but also the duties on the new payroll and timekeeping systems . . . as well as other functions that were then being performed by others." (Def.'s Stmnt. of Material Facts at ¶

30). Plaintiff contends that Milner's performance of additional duties did not justify the extra pay because even if their specific job duties differed, they were still performing "equal work."

Milner's employment began on August 24, 2005, and overlapped with Plaintiff's employment, which ended February 3, 2006. Plaintiff took extended medical leave to have her knees replaced. Plaintiff was on leave from September 20, 2005 through October 23, 2005, and from December 2, 2005 through January 9, 2006. Prior to taking her first leave of absence, Plaintiff trained Milner on the job duties that she was then performing. Plaintiff contends that Milner was a slow learner and that he failed to perform all of her job duties while she was on leave. Plaintiff's apparent contention is that since Milner never performed all the job duties required of the position during the period their employment overlapped, he was free to perform other job duties.

Although Fred Belote had installed the software for the new payroll system, it had not been implemented and part of Milner's job duties was to become familiar with the functions of the new payroll system and to get the new system up and running. Plaintiff argues that Milner's development and implementation of the new payroll system was no different in kind than her prior implementation of other new or special systems, projects or procedures, such as personnel files, policy manuals, 401(k), and tax credits, for which she received less training than Milner and had to implement while performing all the duties of the position, unlike Milner. Plaintiff also states that she was required to spend more time on payroll and timekeeping under the old payroll system than Milner under the new payroll system.

Defendant argues that Milner performed added supervisory and managerial functions that were not performed by Plaintiff. Plaintiff denies this allegation. Plaintiff points out that the added recruiting/hiring tasks Milner picked up were HR related, relatively simply to perform, and

- 4 -

that she had a role, although less extensive, in the same areas during her employment.

While Defendant characterizes as "clerical" the functions that Plaintiff was performing prior to the implementation of the new payroll and time-keeping systems, Plaintiff disputes this characterization, pointing out that the functions involved substantial responsibility, effort and discretion. Under the old system, the process of preparing payroll took three days for Plaintiff to complete. The new system requires much less involvement from Milner, as it allows the supervisors to monitor an employee's time records on a daily basis and permits Milner to complete the payroll process in less than a day.

Defendant contends that the number of both full-time and temporary employees has increased since Plaintiff's requirement. As of today, there are 99 full-time employees and 139 temporary employees. Plaintiff admits that while the company has grown overall, it also grew during her tenure. At one point during Plaintiff's tenure, the Defendant had 125 full-time employees, plus temporary employees. After 1999, the Defendant began reducing its permanent employees, while increasing its temporary employees. Plaintiff points out that since permanent employees are the only ones entitled to significant benefits, Defendant's contention that Milner is required to "spend increased amounts of time addressing employee issues ranging from enrolling new employees into the company's 401(k) plan to answering employee benefit questions" is not credible. (Def.'s Stmt. of Mat. Facts at ¶ 57).

Defendant also contends that Milner was hired not only to replace Plaintiff but also to assume the role of office manager, a function that Plaintiff did not perform. Plaintiff disputes this characterization, contending that Milner's duties as office manager are minimal. For example, while Defendant states that Milner has supervisory responsibility for three office staff - the receptionist and two accounts payable employees – Plaintiff points out that Milner's

"responsibility" is limited to ensuring that the three employees are on time and come to work, and does not involve instructing, evaluating or training them.

Defendant has attempted to outline a number of similar "differences" between the job duties performed by the Plaintiff and Milner. Plaintiff has challenged each and every alleged difference offered by Plaintiff. The Court will not outline further the alleged differences between the human resources manager position as performed by Milner and as performed by Plaintiff. On this summary judgment record, the Court concludes that a reasonable jury could find that the jobs – despite their differences – were "substantially equal." *See Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002)("jobs need not be identical to be considered 'equal' under the EPA; they need only be substantially equal.").

### III.

To prevail on her claims, Plaintiff must show that De Wafelbakkers paid different wages to persons doing "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Tademe v. Saint Cloud State University,* 328 F.3d 982, 989 (8th Cir. 2003)(quoting *Sowell v. Alumina Ceramics, Inc.,* 251 F.3d 678, 682 (8th Cir.2001). *See, e.g., EEOC v. Delight Wholesale Co.,* 973 F.2d 664, 669 (8th Cir.1992) (holding that same standard applies to Equal Pay Act and Title VII wage-discrimination claims). Plaintiff's state law claim under the ACRA will be analyzed in the same fashion.[2] Accordingly, for purposes of the present motion, the Court need not distinguish

---

[2] Neither party contends that a different standard applies to Plaintiff's ACRA claim. There is authority in the ACRA itself and as construed by the Arkansas Supreme Court for looking to Title VII for guidance on discrimination claims under the ACRA. *See Island v. Buena Vista Resort*, 352 Ark. 548, 556-57 (2003)(sexual harassment claim). *See Greer v. Emerson Elec. Co.*, 185 F.3d 917, 920-21 (8th Cir. 1999)(analogous federal ADA decisions considered in deciding disability cases under the ACRA).

between the federal and state law claim.

Determining whether two jobs require equal skill, effort, or responsibility requires a practical judgment of all relevant facts and circumstances. *Tademe, supra,* 328 F.3d at 989. In *Simpson v. Merchants & Planters Bank*, 441 F.3d 572 (8th Cir. 2006), the Eighth Circuit affirmed a jury's finding that the defendant bank willfully violated the Equal Pay Act by paying a female Assistant Vice President less than a male Vice President. The *Simpson* court noted that the appropriate inquiry was whether the jobs were equal, not whether the jobs carried the same title. *Simpson*, 441 F.3d at 578. The Simpson decision offers the following guidance on how to make this determination:

> The inquiry as to whether two jobs are equal is a factual one:
>
>> Whether two jobs entail equal skill, equal effort, or equal responsibility requires a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job. Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job. In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute.

*Id.* (*quoting EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981)).

A defendant's burden under the Equal Pay Act is greater than under the burden-shifting approach used in the typical Title VII case. "Under the EPA, a defendant cannot escape liability by articulating a legitimate non-discriminatory reason for the employment action. Rather, the defendant must prove that the pay differential was based on a factor other than sex." *Id.*, at 579 (*quoting Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 493 (8th Cir. 2003)). Assuming the jury concludes that the Plaintiff and Milner were performing equal work, De Wafelbakkers bears the

burden of proving that the pay differential between the two employees was based upon a factor other than sex.

## CONCLUSION

On the present summary judgment record, the Court concludes that Defendant's Motion for Summary Judgment must be denied. Of course, after all of the evidence is in at trial, the Defendant may raise the same legal issues by motion for directed verdict. At that point, the Court will have a fully developed factual record upon which to base its ruling. Accordingly,

IT IS THEREFORE ORDERED THAT Defendant De Wafelbakkers, Inc's Motion for Summary Judgment (Docket No. 13) be, and it is hereby, DENIED. Defendant's Supplemental Motion (Docket no. 20) is not a motion requiring any ruling from the Court and shall be removed from the docket as a pending motion.

IT IS SO ORDERED this  23rd   day of January, 2007.

 /s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE